UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONSERVATION CONGRESS and
KLAMATH FOREST ALLIANCE,

        NO. CIV. S-07-2764 LKK/KJN

    Plaintiffs,

  v.

        O R D E R

UNITED STATES FOREST SERVICE,

    Defendant.
                            /

This case arises from the planned sale of timber located in the Shasta-Trinity National forest. This court previously enjoined the "Pilgrim project," as the timber sale is known, and remanded the matter back to the U.S. Forest Service for further action. Order, May 14, 2008, ECF No. 39. In September 2010, the court granted the Forest Service's motion for relief from the judgment and dissolved the injunction. ECF No. 73. Plaintiffs have appealed to the Ninth Circuit, and now move for this court to issue an injunction pending appeal.

////

1

## I. Background

Plaintiffs Conservation Congress and Klamath Forest Alliance filed this suit on December 20, 2007, seeking declaratory and injunctive relief for defendant's alleged violations of the National Forest Management Act ("NFMA"), the National Environmental Policy Act ("NEPA"), and related regulations. Plaintiffs alleged that the Forest Service violated those laws in its preparation of the Pilgrim Vegetation Management Project because the planned project did not comply with the Shasta-Trinity national Forest Land and Resource Management Plan ("LRMP") and the Northwest Forest Plan Record of Decision ("NWFP RPD"). In particular plaintiffs objected to the defendant's "proxy on proxy" approach to monitoring wildlife species diversity and health. Under that approach, the Forest Service uses habitat health as a proxy for wildlife species viability. As noted in the May 13, 2008 order, this approach is permissible in the Ninth Circuit "where two conditions are satisfied: first, there must be an accurate and reliable correlation between habitat health and species health, and second, the methodology for measuring habitat must also itself be accurate and reliable." Order 13:5-8, ECF No. 39. This court concluded that it was improper to use the proxy-on-proxy approach in the context of the Pilgrim project because the defendants did not show a sufficient correlation between habitat and species health for the mule deer and the red-breasted nuthatch, which were selected as representative of the broader wildlife community. May 2010 Order 18:6-9, 20. The court rejected plaintiff's other claims, but

1  enjoined the Pilgrim project remanded the matter to the Forest
2  Services for further action consistent with the order.
3      On remand, the Forest Service completed a supplemental
4  environmental impact statement ("SEIS"), and then subsequently
5  filed a Rule 60(b)(5) motion for relief from judgment. In that
6  motion, the Forest Service contended that the SEIS provides
7  additional data and analysis demonstrating that the project would
8  not violate the Forest Service's obligation, under NFMA, to
9  "provide for diversity of plant and animal communities." 16 U.S.C.
10 § 1604(g)(3)(B). The Forest Service also contended that the
11 governing statutes, regulations, and forest plans permit the Forest
12 Service to monitor habitat directly, dispensing with the proxy-on-
13 proxy approach. After reviewing the SEIS, the court concluded that
14 its findings were neither arbitrary or capricious. The court held
15 that given the findings and analysis in the SEIS, "the relationship
16 between habitat and species health was such that the Forest
17 Service's use of habitat in this case was proper." The court
18 further concluded that the Forest Service's findings regarding the
19 project's effects on the mule deer and red-breasted nuthatch were
20 neither arbitrary or capricious. On September 14, 2010 this court
21 granted the Forest Service's motion for relief from judgment and
22 dissolved the injunction. Plaintiffs now seek an injunction pending
23 appeal, which would effectively reinstate the original injunction
24 of the project. For the reasons stated below, plaintiffs' motion
25 is DENIED.
26 ////

## II. Standard of Review

Injunctions pending appeal are governed by Fed. R. Civ. P. 62(c), which provides that: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction in terms for bond or other terms that secure the opposing party's rights."

Under Rule 62(c) the factors regulating the issuance of the injunction are "1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (U.S. 1987). The standard for a Rule 62(c) injunction pending appeal is similar to the standard for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983). Thus, the "sliding scale" approach to preliminary injunctions, the continuing validity of which the Ninth Circuit recently reaffirmed, applies to requests for Rule 62(c) injunctions pending appeal. The Supreme Court has explicitly rejected a version of the sliding scale test for preliminary injunctions in which a showing of a mere possibility of irreparable harm could warrant an injunction when the other traditional factors strongly support issuing an injunction. Winter v. National Resources Defense Council, 555 U.S. 7 (2008). Although Winter made clear that plaintiffs must show a likelihood of irreparable

4

harm–rather than the mere possibility of one–the Ninth Circuit has held that a sliding scale approach may still be used.

> Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits. This circuit has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'

Alliance For The Wild Rockies v. Cottrell, 2011 U.S. App. LEXIS 1473 (9th Cir. 25, 2011)(internal citations omitted). A party seeking an injunction under this 'serious question' standard must still satisfy the other elements of the test from Winter. 555 U.S. 7 (2008). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance For The Wild Rockies, 2011 U.S. App. LEXIS 1473 at 21 (9th Cir. 2011).

Rule 62(c) creates an exception to the principle that the filing of a notice of appeal confers jurisdiction on the appellate court and divests the district court of jurisdiction over the matters at issue on appeal. "This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it 'does

5

not restore jurisdiction to the district court to adjudicate anew the merits of the case.'" Natural Res. Def. Council v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001)(internal citations omitted); see also Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO, 611 F.3d 483, 495 (9th Cir. 2010) Thus, the court can only issue an injunction pending appeal that preserves the status quo.

### III. Analysis

Plaintiffs seek an injunction pending appeal that would effectively restore the injunction that this court dissolved in its September 2010 Order. Plaintiffs claim that they are entitled to such an injunction because they have raised a serious legal question going to the merits of their case, they will suffer permanent and irreparable injury absent an injunction, and the public interest lies in issuing the injunction.

**A. Serious Legal Question**

Plaintiffs do not state in any concise manner what serious legal question they have raised. Instead, they argue that this court should not have granted the defendant relief from judgment in September 2010, because the defendant did not satisfy the conditions of the May 2008 order and no law subsequent to the May 2008 order invalidated that order. It seems that plaintiff is arguing primarily that relief from judgment was not proper because the method used by the Forest Service in the SEIS on remand was the same method that this court has previously found to be improper. Plaintiffs assert that the May 2008 order had held that proxy-on-

6

1  proxy analysis was improper because the "health of the mule deer
2  and red-breasted nuthatch species was not highly correlated with
3  the habitat types chosen to represent their health." Although not
4  labeled as such, the SEIS utilized a methodology substantially the
5  same as the proxy-on-proxy approach. Thus, plaintiffs argue that
6  the SEIS did not satisfy the terms of the court's May 2008 order.
7      Throughout their brief, plaintiffs mischaracterize the court's
8  holding, asserting, e.g., "this court previously ruled that the
9  proxy-on-proxy approach could not be used as a substitute for
10 monitoring mule-deer because there was conflicting information
11 about the cause of the decline in mule-deer populations." Pls.'
12 Mot. for Inj. Pending Appeal 17. Contrary to plaintiffs' position,
13 however, the May 2008 order did not rule out altogether the use of
14 the proxy-on-proxy method for measuring the impact of the project
15 on the mule deer and red breasted nuthatch species. Rather, the
16 court held that the Forest Service had not *shown* a sufficiently
17 high enough correlation between habitat health and species health
18 to justify that approach. As noted in the September 2010 order,
19 defendant cured this defect with "additional analysis and
20 information presented in the SEIS," which demonstrated that "the
21 relationship between habitat and species health was such that the
22 Forest Service's use of habitat in this case was proper." September
23 2010 Order 14:25-15:1.
24     With respect to mule deer, the SEIS discussed the cause of a
25 population decline. The original EIS had concluded that the cause
26 of the decline was unknown, and might have been due to predation.

7

1  The SEIS cited additional studies, including studies by the
2  California Department of Fish and Game, in concluding that the
3  decline in population was largely due to declines in habitat
4  quality, and that predation was not a primary cause of a decline
5  in mule-deer population. The SEIS noted that habitat pressures
6  contributed to high rates of mortality from predation, but that
7  mortality from predation was a symptom of habitat pressure, the
8  underlying cause of the population decline. September 2010 Order
9  16. The SEIS additionally analyzed habitat *quality*, rather than
10 merely using habitat quantity as a proxy for species population,
11 and ultimately concluded that the project would not meaningfully
12 alter trends in mule deer population. This court, upon review of
13 the record, found that the Forest Service's conclusions were not
14 arbitrary and capricious.

15     With respect to the red-breasted nuthatch, the original EIS
16 had not concluded that there was a significant relationship between
17 increases in late seral assemblage habitat and increases in species
18 population. Because of this, the May 2008 order found that proxy-
19 on-proxy analysis was improper. The SEIS, by contrast, analyzed
20 additional data on nut-hatch populations in the project area, as
21 well as data over broader geographic scales, concluding that
22 habitat is correlated with actual populations. Using data from
23 outside of the project is proper when there is no evidence of
24 factors that would cause local population trends to differ from
25 broader trends. The order noted that the Forest Service had used
26 the "best available science" in the SEIS, which, even if imperfect,

8

1  is all that is required of the Forest Service.

2      In sum, the defendants satisfied the court's May 2008 order
3  by conducting, on remand, a SEIS that used additional data and
4  analysis to demonstrate a sufficiently high correlation between
5  habitat and species population to support the methodology used by
6  defendant in concluding that the project would not impair the
7  diversity of plant and animal communities. Plaintiffs, in arguing
8  that the defendant has not satisfied the terms of the May 2008
9  order because the SEIS uses a method very similar to the proxy-on-
10 proxy approach used in the original EIS miss the point of the
11 court's conclusion in the September 2010 order, i.e., that the
12 defendant had provided additional data and analysis to show that
13 the approach was proper in this case. Thus, plaintiff does not
14 raise a serious legal question as to whether the defendant cured
15 the defects noted in the May 2008 order with respect to sufficiency
16 of the correlation between habitat and species population.

17     Plaintiffs frown upon what it characterizes as defendant's
18 reliance on the unpublished Ninth Circuit opinion in <u>Conserv. Cong.</u>
19 <u>V. U.S. Forest Serv.</u>, 2010 U.S. App. Lexis 5437 (2010). Indeed,
20 defendant cited that opinion in its motion for relief from judgment
21 to bolster its argument that it can satisfy its obligations by
22 looking at habitat directly, rather than proving that habitat is
23 an appropriate proxy for species population by demonstrating a high
24 correlation between the two. The court agrees that the unpublished
25 Ninth Circuit opinion has no precedential effect, but this court's
26 September 2010 order did not rely on that opinion. Instead, the

1  court decided that the five-step method used by the defendant in
2  the SEIS complied with the NFMA because it appropriately evaluated
3  the project's likely impact on plant and animal diversity in that
4  it predicted changes to habitat, predicted the effect that those
5  changes would have on three species identified as representative
6  of the greater wildlife population, and used this analysis to
7  inform its prediction of the effects the project would have on the
8  collections of species. The court noted that the label affixed to
9  this method, whether 'proxy-on-proxy,' or something else, is
10 unimportant to the conclusion. September 2010 Order at 14.
11     Accordingly, the court concludes that the plaintiffs have not
12 raised a serious legal question as to the merits of this case.

**B. Irreparable Injury**

14     Plaintiffs' counsel has submitted a declaration stating that
15 defendant has informed them that logging and sales of timber from
16 the Pilgrim project may commence at any time. Dugan Decl. ¶ 2, ECF
17 No. 80. Plaintiffs argue that "logging itself constitutes
18 irreparable harm," Pls.' Mot. 25:16, and cite Earth Island Inst.
19 v. United States Forest Serv., 351 F.3d 1291 (9th Cir. 2003) for
20 this proposition. That case, however, states "a Forest Service
21 logging plan may, in some circumstances, fulfill the irreparable
22 injury criterion because of the long term environmental
23 consequences." Id. at 1299 (emphasis added). Although
24 "[e]nvironmental injury, by its nature, can seldom be adequately
25 remedied by money damages and is often permanent or at least of
26 long duration, i.e., irreparable," Lands Council v. McNair, 537

10

1  F.3d 981, 1004 (9th Cir. 2008)(citing Amoco Prod. Co. v. Vill. of
2  Gambell, 480 U.S. 531 (1987)), the Ninth Circuit has "decline[d]
3  to adopted a rule that any potential environmental injury
4  automatically merits an injunction, particularly where, as in this
5  case, we have determined that the plaintiffs are not likely to
6  succeed on the merits of their claims." Lands Council, 537 F.3d at
7  1005. Logging is no exception: the "argument that logging is per
8  se enough to warrant an injunction because it constituted
9  irreparable environmental harm was squarely rejected by McNair."
10 Earth Island Inst. v. Carlton, 626 F.3d 462, 474 (9th Cir. 2010).
11 While logging and timber sales do not constitute per se irreparable
12 harm, plaintiffs here have shown that irreparable harm is likely
13 to occur because of the large scope of the Pilgrim project, which
14 will result in the loss of over 500 acres of habitat. Once lost,
15 the habitat would take decades, if not more, to recover.

16     Defendants counter that the Pilgrim project will in fact have
17 a positive impact on the environment, since the project will
18 "combat the threats posed by overstocked stands, which include
19 moisture stress and the spread of root disease and insect
20 infestations," thus reducing the risk of "catastrophic wildfire."
21 Def.'s Oppo. 18.

22     Given defendant's statement to plaintiffs' counsel that
23 logging and timber sales are imminent, and the large scope of the
24 project, the court concludes that plaintiffs have demonstrated at
25 least a likelihood that irreparable harm–destruction of over 500
26 acres of habitat--will occur in the absence of the injunction.

11

**C. Balance of Hardships**

When plaintiffs request an injunction on the basis of a serious legal question, rather than a strong likelihood of success on the merits, they must show that the balance of hardships tip sharply in their favor. Alliance For The Wild Rockies, 2011 U.S. App. LEXIS 1473 at 21 (9th Cir. 2011). In this case, plaintiffs request that the court apply the "serious legal question" standard, but make no argument that the balance of hardships tip sharply in their favor. Plaintiff appears to conflate this element of the Winter analysis with the irreparable harm element, even though the Ninth Circuit has made clear that all four elements must be met in order for an injunction to issue. Id.

As noted above, plaintiffs have demonstrated a likelihood that irreparable harm will occur to over 500 acres of habitat if the Pilgrim project moves forward. This hardship must significantly outweigh the hardship that an injunction would impose on the defendant. The defendants assert two hardships that would occur. First, the U.S. Forest Service states that the Pilgrim project is designed to improve the health of the forest, and the risks currently posed by over-population will go unabated if the project is enjoined. Insect infestation and disease will spread, and the risk of wildfire will increase. Second, defendant intervenors Rough and Ready Lumber, LLC ("Rough and Ready"), and Sierra Pacific assert an economic hardship. A court may balance environmental preservation with economic harms, such as the loss of revenue from timber sales and related economic impacts. See, e.g., Lands Council

537 F.3d at 1005, Wildwest Inst. v. Bull, 472 F.3d 587 (9th Cir. 2006) (holding that the district court did not abuse its discretion in concluding that "the possibility of a severe wildfire in the area, and the inherent danger to human life, constituted measurable injuries, as did the money the Service would lose in revenue from timber sales."). Rough and Ready claims that it has already made a down payment on a portion of the timber to be sold from the Pilgrim project, and that the quality of the timber will decline if an injunction is issued. Rough and Ready estimates a decline of $1 million in the value of the timber. Sierra Pacific has made a down payment on another portion of timber to be sold from the Pilgrim project. Rough and Ready claims that it has already made adjustments to its operations in anticipation of the timber from the Pilgrim project. Decl. Phillippi 2. Rough and Ready also states facts showing that there are seasonal considerations with respect to the timber from the project: the timber is largely inaccessible during the wet spring season, and the company needs access to the timber before that wet season begins in order to keep the mill operating and the company's ninety (90) employees working. Id. 3-4.

Plaintiff argues that the defendant-intevenors entered into purchase agreements for the timber at their own peril, since the agreements were made while this suit was pending. In such cases, where the defendant-intervenor is on notice of a potential injunction, the court should not balance the harms that would flow to that party as a result of the injunction. See, e.g. Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1187 (9th Cir.

13

2000) (holding that "BLM and Gold Fields acted at their peril in transferring the land while on notice of the pendency of a suit seeking an injunction against them."). In this case, despite compelling arguments that Rough and Ready has made about the hardships the company and its employees will endure if logging in the Pilgrim project is enjoined, the court concludes that the defendant-intervenors were on notice that the project might be enjoined, and any economic investments related to the project were made at the companies' own peril. The court therefore will not factor those economic losses in to the balance of hardships.

Balancing the likelihood of destruction of 500 acres of habitat with the likelihood that the project will actually improve environmental conditions in the project area the court concludes that the balance of hardship do not tip sharply in plaintiff's favor.

**D. The Public Interest**

Plaintiffs assert that the public interest lies in the preservation of the forest and its resources, as well as in agency compliance with environmental regulations. Defendants argue that the Pilgrim project *will* protect the health of the forest by eliminating the causes of disease, insect infestation and wildfire. In this case, the court concluded that the Forest Service has complied with the applicable environmental regulations, and the public interest lies in allowing the agency to proceed with the project that it, based on its expertise, has determined will benefit the forest.

14

**E. Briefing Requested at Oral Argument**

At oral argument the court asked plaintiffs whether there was a limited area of particularly sensitive habitat in which logging operations had not yet commenced. The court indicated, but did not conclude, that a limited injunction on logging in such an area might be appropriate if it did not disrupt logging operations already underway. Plaintiff replied that there were approximately 500 acres of late-successional habitat in which logging had not yet begun. The court ordered plaintiff to submit a description of those 500 acres, and provided an opportunity for defendants to respond. Plaintiffs timely filed a description of 403 acres that they deemed to be of "greatest concern" but plaintiff did not state whether timber harvest in these areas had already begun. The property description included parcels of varying types of habitat. Defendants have argued that many of the parcels contained in plaintiffs' description include stands of trees that are dead or dying, and which may pose a danger to the health of the surrounding forest and to users of the forest. Plaintiffs' submission did not convince the court that a limited injunction covering the area described is warranted under the factors discussed above with respect to an injunction pending appeal of the entire project. However, defendant-intervenors state in their response to plaintiff's post-hearing brief that they are willing to defer harvest in three units within the project–units 421, 422, and 431–for the duration of the appeal. The federal defendants argue, however, that the trees on unit 421 pose a danger to recreational

users of the forest. The court therefore GRANTS a limited injunction on timber harvesting activities in units 422 and 431 pending plaintiffs' appeal to the Ninth Circuit.

### IV. Conclusion

The court concludes that plaintiffs are not entitled to a Rule 62(c) injunction pending appeal because they have not raised a serious legal question, nor that the balance of hardships or the public interest tip sharply in their favor. However, because of the potential for irreparable harm, the court will grant the plaintiff a limited injunction of ten (10) days to allow the plaintiff to seek a stay from the Ninth Circuit. Additionally, the court ENJOINS the project with respect to units 422 and 431 throughout the appeal period. Accordingly, the court ORDERS as follows:

[1] Plaintiff's motion for an injunction pending appeal, ECF No. 80 is GRANTED in part and DENIED in part.

[2] This court's September 2010 Order, ECF No. 73 is temporarily suspended for ten (10) days from the issuance of this order in order to allow the plaintiff to seek a further stay from the Ninth Circuit.

[3] For those ten (10) days, this court's injunction issued May 2008, ECF No. 39, is restored.

[4] Defendants are ENJOINED from harvesting timber in units 422 and 431 for the entire appeal period.

IT IS SO ORDERED.

DATED: March 23, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT